Filed 8/24/23  P. v. Denial CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER ROBERT DENIAL,<br><br>        Defendant and Appellant. | B319716<br><br>(Los Angeles County<br>Super. Ct. No. SA103580) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William L. Sadler, Judge.  Affirmed.

Jason A. Lieber, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Blake Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Christopher Robert Denial (defendant) appeals his felony conviction for battery with injury upon a police officer (Pen. Code, § 243, subd. (c)(2))[1] and his misdemeanor conviction for vandalism (§ 594, subd. (a)).  He argues that the trial court violated the confrontation clause in admitting the statements of two non-testifying witnesses and asks us to independently review the trial court's examination of law enforcement personnel records.  Concluding there is no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

On a Wednesday morning in early September 2020, a bus driver and bus passenger approached two Beverly Hills police officers.  In agitated voices, they reported that a man who was being chased for stealing food had "jumped on the bus" and was "tearing [it] up" by "slamming his head against the bus" window hard enough to knock the window open.  The officers saw a man who "appear[ed]" to be "calm[ly]" walking away from the bus, but who was carrying a bag with unknown contents.  That man was defendant.  The officers feared that defendant was "aggressive and in some type of agitated state, and he could potentially harm people on the bus."  When police attempted to place defendant in

---

1 All further statutory references are to the Penal Code unless otherwise indicated.

handcuffs, defendant—who was 6 feet, 7 inches tall—resisted "the whole time." In order to get defendant to stop squirming, the two officers brought defendant to the ground. Defendant continued to resist, so they sprayed him with pepper spray. When the spray had no effect and defendant bit one officer's finger and leg hard enough to break the skin, the officers hit him several times in the head. However, it was not until three other officers arrived that they were collectively able to place defendant in handcuffs. The entire melee was recorded on the officers' body cameras. As defendant was being transported to the police station, he bit through the wiring of the camera aimed at the backseat of the patrol car, causing less than $400 in damage to the equipment. This, too, was recorded on video.

## II. Procedural Background

The People charged defendant with (1) battery with injury upon a police officer (§ 243, subd. (c)(2)), and (2) vandalism causing less than $400 in damage, which is a misdemeanor (§ 594, subd. (a)).[2]

Defendant filed a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), asking the trial court to review the personnel records for the five police officers present for the melee. After conducting an in camera review, the trial court ordered that certain records be released to defendant.

---

[2] The People initially also charged defendant with felony vandalism (for causing damage exceeding $400) for the damage to the bus's windows, but dismissed that charge after the close of evidence.

3

The matter proceeded to a three-day jury trial in March 2022.[3]  The trial court instructed the jury on the charged offenses as well as the crime of battery (as a lesser included offense to battery causing injury).  Defendant argued that he was justified in resisting arrest because the arresting officers were not engaged in "lawful" conduct.

The jury convicted defendant of both counts.

The trial court sentenced defendant to 16 months in the county jail for the battery causing injury count, and 180 days in the county jail for the misdemeanor vandalism count; these amounted to sentences of "time served."

Defendant filed this timely appeal.

## DISCUSSION

### I.  Admission of Bus Driver's and Bus Passenger's Statements

#### A.  *Pertinent facts*

##### 1.  *Underlying events*

Approximately five minutes before the bus driver and bus passenger approached the two Beverly Hills police officers who initially attempted to detain defendant, those officers had stopped a homeless man for jaywalking.  They did not touch him, but detained him while asking him whether he was on probation, whether he was carrying drugs, and whether he would consent to a search.

The officers' bodycams were turned on, and their interaction with the man was recorded.  Those videos captured

---

[3]  The trial court suspended proceedings after defendant's attorney declared a doubt about defendant's competency, but subsequently reinstated proceedings after defendant was found to be competent.

the initial dialogue as the bus driver and bus passenger interrupted the prior stop in order to alert the officers to defendant's conduct:

[Driver:]  "He's tearing up the bus."

[Officer:]  "Say what?"

[Driver:]  "He's tearing up the bus.  He's slamming his head against the bus."

[Officer:]  "That guy?"

[Driver:]  "Yeah.  Right here."

[Passenger:] "He just stole a bunch of food from a truck—I got on and they were chasing him."

[Driver:]  "He jumped on the bus."

[Passenger:] "He got on the bus and now he's breaking the windows."

[Driver:]  "He's hitting his head against the window."

[Officer:]  "And he actually broke it?"

[Driver:]  "He knocked it open.  I gotta…"

[Officer:]  "That guy?"

[Driver:]  "Yeah, right there."

[Passenger:] "He just stole a bunch of food at a convenience store, . . . [b]y Crescent Heights.  At Crescent Heights, they were chasing him.  He's really very dangerous."

2.  *Litigation of admissibility*

On the first day of trial, defendant moved in limine to admit the portion of the bodycam footage showing the officers' interaction with the homeless man stopped for jaywalking, to show that the officers were "bias[ed]" against, or had "animosity" towards, homeless persons.  Over the prosecutor's objection, the court admitted the evidence, but further ruled that this evidence would make relevant—and hence open the door for admitting—

the bus driver's and bus passenger's statements to the officers for the nonhearsay purpose of showing that the officers' interaction with defendant was not due to any bias against homeless persons but rather to respond to the ruckus he was causing on the bus.

Later during the trial, the trial court further explained that the bus driver's and bus passenger's statements were also (1) admissible for their truth to show "why [the officers] detained [defendant]," reasoning that the statements fit into the "excited utterance" exception to the hearsay rule (because the declarants were "a little excited and emotional" and "the incident [on the bus had] just occurred"); and (2) not "testimonial" statements subject to the confrontation clause because the exchange between them and the officers was "made in the furtherance of [obtaining] assistance [and] help" in response to the ongoing emergency of defendant's erratic and potentially dangerous behavior, and not "for a police report or for some sort of evidentiary purposes."

3. *Use of evidence at trial*

The People introduced the portion of the bodycam video showing the bus driver's and bus passenger's statements to the officers. Defendant introduced the portion of the bodycam video showing the officers' interaction with the homeless man. During closing argument, defendant argued that this video "plays an important role in how [the officers] view what their performance of a lawful duty is."

B. *Analysis*

Defendant argues that the trial court erred in admitting the bus driver's and bus passenger's statements, and more specifically argues that their admission violated the confrontation clause. We generally review the admission of evidence for an abuse of discretion (*People v. Parker* (2022) 13 Cal.5th 1, 39), but

6

independently review the application of constitutional law to undisputed facts (*People v. Garcia* (2020) 46 Cal.App.5th 123, 168).[4]

The trial court did not err in admitting the bus driver's and bus passenger's statements. As the trial court's rulings indicated, the court seemed to admit these statements for two reasons—namely, (1) as evidence that the officers were not acting with any anti-homeless person bias when they approached defendant, and (2) as evidence that the officers had probable cause to detain defendant, and hence were engaged in their lawful duties when they approached defendant.

When admitted to show the absence of bias, these statements were not hearsay *at all*; instead, they were admitted to show what the officers knew or believed at the time they approached defendant, and hence the statements were admitted to show their "effect on the hearer" (in this case, the officers). Because the statements were not hearsay for this purpose (as the effect on the officers was the same whether or not what the declarants said was true), both the hearsay rule *and* the confrontation clause are inapplicable. (*People v. Ervine* (2009) 47 Cal.4th 745, 775-776 [statements not offered for their truth are not hearsay and do not "run afoul of the confrontation clause"]; *People v. Scalzi* (1981) 126 Cal.App.3d 901, 907 [statements admitted to show effect on hearer are admissible]; *People v. Hopson* (2017) 3 Cal.5th 424, 432 [statements that are not admitted for their truth do not implicate the confrontation

---

[4]     The People argue that defendant forfeited this issue by not making a proper confrontation clause-based objection. This argument ignores that defendant specifically "object[ed] under the violation of the confrontation clause."

clause]; *Crawford v. Washington* (2004) 541 U.S. 36, 59, fn. 9 (*Crawford*).)  Although the trial court did not instruct the jury only to consider the statements for this nonhearsay purpose, the lack of an instruction is of no concern because defendant never asked for such an instruction (as is required) (Evid. Code, § 355), and because, as discussed next, the statements were also independently admissible for their truth.

When admitted to show probable cause (and, as we will assume for purposes of this argument, admitted for their truth), the statements are still admissible.  For *this* purpose, the statements are hearsay, but they constitute an excited utterance (see Evid. Code, § 1240), and defendant does not dispute the applicability of that exception on appeal.  The statements are also not "testimonial" under the confrontation clause.  *Crawford* narrowed the confrontation clause to reach only those out-of-court statements that are "testimonial" (*Davis v. Washington* (2006) 547 U.S. 813, 824 (*Davis*); *Whorton v. Bockting* (2007) 549 U.S. 406, 420), and subsequent cases have defined "testimonial" statements as those made with a "primary purpose of creating an out-of-court substitute for trial testimony" (*Michigan v. Bryant* (2011) 562 U.S. 344, 358 (*Bryant*)).  Because this definition does not reach statements whose "primary purpose" is to "enable police assistance to meet an ongoing emergency," the confrontation clause does not apply to such statements.  (*Davis*, at p. 828; *Bryant*, at p. 359.)  That is precisely the type of statement we have here.  The bus driver's and bus passenger's "primary purpose" in contacting the two police officers was to report the ongoing emergency of a man "tearing up" the bus and slamming his head against the interior windows of the bus.  Had they called 911 to report this incident, there is no question that

the content of that call would not be "testimonial"; their conduct in walking over to the police officers to report the incident is functionally no different. (Accord, *People v. Corella* (2004) 122 Cal.App.4th 461, 469; *People v. Byron* (2009) 170 Cal.App.4th 657, 675-676; *People v. Saracoglu* (2007) 152 Cal.App.4th 1584, 1596-1598.)

Defendant responds with two arguments.

First, defendant argues that there was no longer an "ongoing emergency" at the time the officers approached him because he was no longer attacking the bus and otherwise appeared "calm." This argument is explicitly foreclosed by *Bryant*. In *Bryant*, police responded to a man who lay dying in a gas station; when they asked him what happened, he reported that defendant had shot him 25 minutes earlier. Before the Supreme Court, defendant argued that his victim's statements were "testimonial" because there was no longer any "ongoing emergency" because defendant had last fired a shot 25 minutes earlier; *Bryant* rejected that argument, reasoning that "the scope of an emergency in terms of its threat to individuals other than the initial assailant and victim" are context specific, and that statements can be made with the "primary purpose" of responding to an ongoing emergency even if the "precise[]" "violent act" that prompted the statements has concluded. (*Bryant*, *supra*, 562 U.S. at pp. 372, 374.) Here, defendant may no longer have been threatening the bus driver and bus passengers once he got off the bus, but his erratic behavior was equally dangerous to anyone else he encountered—particularly when he was carrying a bag with unknown contents.

Second, defendant argues that admission of this evidence violated Evidence Code section 352 because its probative value

9

was substantially outweighed by the danger of undue prejudice. Specifically, he urges that the bus driver's and bus passenger's accounts of what he did on the bus have little probative value because they do not prove any of the crimes he subsequently committed (namely, the battery on the officer or the vandalism to the patrol car), and are very prejudicial because they involved "uncharged and unproven crimes that disturbed the . . . peace." Defendant forfeited this argument before the trial court by not objecting on this basis below (Evid. Code, § 353), and waived this argument on appeal by waiting until his reply brief to raise it (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10). But even if we were to ignore these deficiencies, and even if we were to assume for purposes of argument that Evidence Code section 352 would be violated, the admission of this evidence was not prejudicial because the evidence of defendant's guilt of the charged crimes was overwhelming: Both his battery of the officer causing injury and his vandalizing the back of the patrol car were caught on video. Defendant at one point urges that the statements were "so prejudicial" that they rise above harmless error; we are not sure what that even means. There is no such thing as "super prejudicial errors," and the uniform weight of precedent treats the erroneous admission of evidence like any other error review for harmlessness.

## II. *Pitchess* Review

Defendant also asks us to examine whether the trial court properly conducted its in camera *Pitchess* hearing. Where, as here, the trial court finds good cause to examine a law enforcement officer's personnel file for potentially discoverable information, the court must conduct an in camera hearing at which it examines the file and must "make a record of what

documents it examined before ruling on the *Pitchess* motion." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.)  The court's ruling will be upheld absent an abuse of discretion.  (*Id.* at p. 1228.)  Here, the trial court found good cause to examine the officers' records and ordered disclosure as to some of those records.  We have independently reviewed the sealed reporter's transcript of the in camera hearing, and conclude that the trial court properly exercised its discretion and that no other personnel records of the five officers at issue were subject to disclosure.  To the extent defendant asks for a more detailed analysis of our review, he is not entitled to such analysis and we decline his invitation.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST

11